**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JEFFERY J. YATES, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| vs. | )   Case No. CIV-08-320-F |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
|         Defendant. | ) |

**REPORT AND RECOMMENDATION**

Jeffery J. Yates ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing his applications seeking disability insurance benefits and supplemental security income payments in September, 2004 [Tr. 12, 107, and 213 - 215]. He alleged that he suffers from fibromyalgia which became disabling as of January 15, 2004 [Tr. 68 - 69]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 29 - 31, 33 - 37, 209 - 212, and 216 - 218]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted a March, 2007 hearing where Plaintiff, who

was represented by counsel, and a vocational expert testified [Tr. 27 and 268 - 302]. In her December, 2007 decision the ALJ found that Plaintiff remained able to perform his past relevant work as a millwright supervisor and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 12 - 17]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 4 - 7], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff raises two very specific claims on appeal. The first is whether the ALJ erred in failing to consider Plaintiff's excellent work history in her assessment of Plaintiff's credibility, and the second is whether the ALJ's formulation of a residual functional capacity ("RFC")[1] for light work is consistent with evidence considered by the Appeals Council regarding Plaintiff's heart impairment [Doc. No. 10, p. 4].

**Analysis**

    **Credibility Assessment**

---

[1]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The ALJ determined that Plaintiff – fifty-one years old on the date of the ALJ's decision with an eighth grade education and past work experience as a millwright, a millwright supervisor, and a janitor [Tr. 276, 280 - 281, and 282 - 284] – was severely impaired by fibromyalgia but, despite such impairment, had the RFC to perform light work [Tr. 14]. The ALJ summarized Plaintiff's testimony, and his subjective complaints, as follows:

> The claimant testified that he is disabled due to irritable bowels with alternating periods of diarrhea and constipation; psychiatric condition with signs and symptoms including depression and feelings of sadness and worthlessness; a hernia in the mid chest for the last 4 or 5 years; shortness of breath, aggravated by lying down; and pain in the shoulders, spine, hips, legs, and feet of a constant nature. He indicated that his pain is precipitated by walking and is of sufficient severity to affect his ability to concentrate. The claimant estimated that he is limited to lifting 10 pounds, sitting 1 hour, standing 15 minutes, and walking 50 yards. The claimant described daily activities including taking out the trash and going to the mailbox. The claimant testified that he is unable to do the laundry or vacuum.

[Tr. 16]. She then proceeded, as required, to consider Plaintiff's allegations of disabling symptoms in order to "decide whether [s]he believe[d] them." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

The ALJ determined, based upon her consideration of the evidence of record, that Plaintiff's "medically determinable impairment" – fibromyalgia[2] – "could not reasonably be expected to produce the symptoms to the degree alleged, and the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible and are not supported by the evidence." [Tr. 16]. She gave four specific reasons for her credibility determination:

(1) Plaintiff continues to smoke one pack of cigarettes a day against medical advice;

(2) Plaintiff uses only over-the-counter medication and no prescription medication;

(3) Plaintiff has received no medical treatment since March, 2005; and,

(4) the objective medical evidence does not support "the claimant's allegedly disabling impairments."

*Id.*

With respect to the objective medical evidence, the ALJ noted that x-rays of Plaintiff's feet and left ankle were taken in October, 2004 [Tr. 16 and 163]. The x-rays were apparently indicated by Plaintiff's complaint of "Joint pains;" calcaneal spurs but otherwise normal findings were reported. *Id.* Then, in November, 2004 Plaintiff underwent an internal

---

[2] With the exception of Plaintiff's post-hearing heart difficulties – the evidence of which was presented to the Appeals Council and is the subject of Plaintiff's second claim of error – Plaintiff makes no argument that the ALJ/Commissioner erred by failing to consider any other impairment.

medicine consultative examination in connection with his Social Security claims [Tr. 16 and 178 - 185]. The examining physician noted the following with regard to Plaintiff's fibromyalgia:

> The claimant reports a diagnosis of fibromyalgia producing generalized body pain. He says that he began having this condition about five years ago and it is a constant trouble for him with pain with walking, bending, sitting, standing, lifting, yard work, and household chores. He thinks it is associated with shortness of breath, nausea, sweating, dizziness, palpitations, and numbness and tingling in his legs. He has had blood tests and x-rays done and has been treated with Lortab and it does help a bit. The fibromyalgia does include achiness in both shoulders, both wrists, both ankles, both hips, both elbows, both hands, both knees, and both feet. He does not use an assistive device to walk such as a cane or walker. He feels the joints may be worse with standing 10 minutes, walking [a] half-block, lifting 10 pounds, or bending.

[Tr. 178].

The consultative physician's findings on examination were extensive: the circumferences of Plaintiff's upper and lower extremities were similar without muscle wasting or fullness; upper extremity examination revealed trace crepitation but no shoulder impingement signs; carpel compression testing of the left wrist was positive; Tinel's sign testing showed changes in both hands; fingers were opposable and grip strengths were normal; there was no hip pain with palpation; no muscle wasting or fullness of the hips was observed [Tr. 16 and 180]; both knees were free of joint line tenderness; neither anterior or posterior knee pain was noted; there was no crepitation or joint enlargement in either knee; no abnormal spinal curvatures were noted in Plaintiff's neck or back; light spinal touch was negative; spinal examination revealed no muscle spasm, tightness, tenderness, knots, bands,

or trigger points; toe flexors and extensors had 5/5 strength; straight leg raising was negative; and, Plaintiff was able to heel and toe stand without difficulty [Tr. 16, 181 and 185].

Also in connection with the objective medical evidence, the ALJ found that Plaintiff was seen by a private physician during 2004 on September 17, October 15, November 16 and November 29 and in 2005 on May 3 [Tr. 16 and 194 - 195].  With respect to these treatment records, the ALJ noted that they contain references to Plaintiff's subjective complaints, notations of prescriptions and "few if any references to positive findings upon physical examination or laboratory testing" which would support restrictions in addition to Plaintiff's RFC for light work [Tr. 16].

Finally, the ALJ's medical evidence review reflects her consideration of the residual functional capacity assessment completed by the State agency medical consultant [Tr. 16 and 186 - 193].  The physician determined that Plaintiff had the RFC for medium work and provided the following supporting explanation:

> This is a 48 y/o male alleging complications due to fibromyalgia.  There is a history of COPD and reflux esophagitis.  He was treated for COPD exacerbation on 09/25/03 and released 09/28/03 to be treated as outpatient. PA/LAT of the chest, 09/26/03 showed heart and lungs normal, no consolidations, no effusions or infiltrates.  Chest was normal and there were no significant COPD changes radiographically. Current exam, 11/29/04 shows mild limitation in back range of motion with flexion being 80/90 degrees and extension being 10/25 degrees. Examination of the chest revealed clear breath sounds in all fields.  Heart rate was regular and rhythmic without murmurs. There was no neurological deficit noted, and the patient's gait was steady and normally paced without the need of an assistive device.  It is felt that these findings would support this RFC.  Pain does not further limit.

[Tr. 187 - 188]. The ALJ, however, formulated a more restrictive RFC, concluding that Plaintiff was limited to light work [Tr. 14 and 16].

While Plaintiff makes passing reference – without voicing a specific objection supported by legal authority – to the ALJ's findings regarding his lack of medical treatment and his pack-a-day smoking habit,[3] the issue he presents on appeal is whether the ALJ's credibility assessment is flawed because it contains no discussion "as to [Plaintiff's] excellent work history." [Doc. No. 10, p. 17]. In support of this claim that his consistent work record is probative of his credibility, Plaintiff relies on Social Security Ruling 96-7p, 1996 WL 374186, which states that when evaluating credibility the adjudicator must consider the entire case record, *id.* at 1, including the claimant's statements about his "prior work record and efforts to work." *Id.* at 5. Plaintiff places further reliance on decisions from the Second and Eighth Circuits equating a good work record with entitlement to "substantial credibility." [Doc. No. 12, pp. 1 - 2; Doc. No. 10, pp. 18 - 20].

The ALJ – who specifically noted her consideration of the evidence of record [Tr. 16] – examined Plaintiff at length concerning his work record [Tr. 280 - 286]. She established

---

[3]In requesting reconsideration of the denial of his claims at the State agency level, Plaintiff stated in February, 2005 that he no longer had the means to see a doctor or to obtain medicine [Tr. 93]. In response to the ALJ's questioning, Plaintiff stated that he attempted to obtain treatment at a free clinic several weeks before his administrative hearing in March, 2007 but was advised that his "problems was past their scope of helping me." [Tr. 274]. Plaintiff, however, smoked a package of cigarettes per day, down only recently from two packs a day [Tr. 286 - 287]. Moreover, Plaintiff was asked at his hearing if he has "a problem with pulmonary disease[.]" [Tr. 290]. Plaintiff stated that he did – the ALJ found it to be a non-severe impairment [Tr. 14] — and acknowledged the impact of smoking on the disease [Tr. 290 - 291].

through her questioning that Plaintiff quit his most recent work as a janitor – at the medium exertional level – because he was no longer able to perform the job [Tr. 284 and 296]. She further explored Plaintiff's history as a millwright and his subsequent position as millwright supervisor which ended when the company for which he worked went under [Tr. 280 - 284]. Nonetheless, she determined that Plaintiff's subjective allegations were less than credible, specifically linking the evidence she relied upon for this conclusion. And, while a Plaintiff's work history is certainly a factor for consideration in the assessment of credibility, "[s]o long as the ALJ sets forth the specific evidence [s]he relies on in evaluating the claimant's credibility," *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000), " a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Id.* Plaintiff has failed to establish that the ALJ committed any legal error in connection with her assessment of Plaintiff's credibility.

### New Evidence Before the Appeals Council

Between the time of his administrative hearing in March, 2007 and the ALJ's December, 2007 decision, Plaintiff suffered from heart difficulties, the evidence of which he presented to the Appeals Council[4] [Tr. 4 - 7 and 222 - 264]. Plaintiff and the Commissioner concur that this evidence reveals that in November, 2007 "objective testing demonstrated double vessel coronary artery disease with significant mid left circumflex stenosis and a

---

[4] The Appeals Council considered the evidence but determined that it "does not provide a basis for changing the Administrative Law Judge's decision." [Tr. 4 - 5]. The Commissioner does not dispute that the new evidence is now a part of the administrative record which this court must consider in its review on appeal.

normal overall left ventricular systolic function and ejection fraction with no regional wall motion abnormality." [Doc. No, 11, p. 6, citing Doc. No. 10, p. 20 and Tr. 263].  Likewise, the parties agree that Plaintiff subsequently underwent the placement of stents [Doc. No. 10, p. 22; Doc. No. 11, p. 6; Tr. 260 - 261].

Plaintiff maintains that his "documented heart impairment . . . is not an insignificant matter." [Doc. No. 10. p. 22].  While conceding "that heart disease and placement of a stent(s) is an individualized matter and affects each person differently[,]" Plaintiff nonetheless maintains that "[i]t should certainly rise to the level of a 'severe' impairment at Step 2 of [the] sequential evaluation process as it will affect a person's ability to do job-related functions."  *Id.* at 22 - 23.  Plaintiff argues that the Appeals Council did not address how this evidence might impact Plaintiff's RFC, contending that a more limited RFC could result in a disability finding depending on vocational factors such as transferrable skills.  *Id.* at 23.  The Commissioner, on the other hand, correctly points out that the focus in a disability determination is not on the diagnosis of an impairment but rather on the functional limitations resulting from the impairment [Doc. No. 11, pp. 6 - 7].  *See Bernal,* 851 F.2d at 301.  According to the Commissioner, no physician placed any restrictions upon Plaintiff as a result of his heart condition and "Plaintiff himself [does] not specify what additional limitations beyond those contained in a residual functional capacity for light work resulted from his heart impairment."  *Id.* at 6.

In his reply brief, Plaintiff does not direct the court to any evidence of any functional limitation or restriction resulting from his heart difficulties but argues, instead, that "[m]ost

medical records as a practical matter are not prepared in anticipation that they might be utilized in a potential Social Security claim or proceeding." [Doc. No. 12, p. 2]. Then, Plaintiff argues that the State agency consultant – Dr. Woodcock – who prepared the residual functional capacity assessment in this case [Tr. 186 - 193] – specifically noted that there was no treating or examining source statement regarding Plaintiff's physical capabilities in the file [Doc. No. 12, p. 2 and Tr. 193]. According to Plaintiff, the absence of such a statement did not prevent Dr. Woodcock from making an assessment and "Dr. Woodcock's assessment for Light work was based solely on an impairment of fibromyalgia."[5] [Doc. No, 12, p. 2]. He then states that the Commissioner is suggesting that his condition "is a trivial condition which imposes no physical limitations [but that c]ommon sense indicates otherwise." *Id.* at 3.

Contrary to Plaintiff's argument, there is no analogy between Dr. Woodcock – a "highly qualified physician[]" and expert in Social Security disability evaluation, 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I) – making an RFC assessment in the absence of a medical source statement reflecting functional restrictions and this court applying "common sense"[6] to presume physical limitations from an impairment alone. As Plaintiff acknowledges, every individual is impacted in a different manner by heart disease and stent placement [Doc. No. 10, p.22]. It is Plaintiff's responsibility to provide evidence "showing

---

[5]This, of course, is not the case. Dr. Woodcock based his RFC conclusions on the medical evidence of record [Tr. 187 - 188].

[6][Doc. No. 12, p. 3].

how your impairment(s) affects your functioning. . . ." 20 C.F.R. §§ 404.1512(c); 416.912(c). The evidence provided by Plaintiff to the Appeals Council does not demonstrate how his heart disease and stent placement affected his functioning and, thus, there was no basis for altering the ALJ's assessment of Plaintiff's RFC.

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by January 5, 2009, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 16th day of December, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE